1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JORGE HERNANDEZ,

11              Plaintiff,                    No. CIV S-07-1986 GEB DAD P

12        vs.

13   KAREN KELLY, et al.,                     ORDER AND

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary

18   judgment brought on behalf of defendants Bal and Kelly.  Plaintiff has filed an opposition to the

19   motion.

20                              **BACKGROUND**

21              Plaintiff is proceeding on an amended complaint against defendants Bal and

22   Kelly.  Therein, he alleges that he suffers from a "fatty tumor" on his right shoulder that causes

23   him a great deal of pain and limits his ability to move and exercise.  According to plaintiff, he

24   has lost weight, experienced muscle atrophy, and his overall health has deteriorated as a result of

25   this tumor.  Plaintiff claims that the defendants have been deliberately indifferent to his serious

26   medical needs in violation of the Eighth Amendment in that they have refused to surgically

                                         1

1  remove the tumor.  In terms of relief, plaintiff requests declaratory judgment and monetary

2  damages.  (Am. Compl. at 5-5b.)

3                    **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

4            Summary judgment is appropriate when it is demonstrated that there exists "no

5  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

6  matter of law."  Fed. R. Civ. P. 56(c).

7            Under summary judgment practice, the moving party
             always bears the initial responsibility of informing the district court
8            of the basis for its motion, and identifying those portions of "the
             pleadings, depositions, answers to interrogatories, and admissions
9            on file, together with the affidavits, if any," which it believes
             demonstrate the absence of a genuine issue of material fact.

10

11  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

12  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

13  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

14  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

15  after adequate time for discovery and upon motion, against a party who fails to make a showing

16  sufficient to establish the existence of an element essential to that party's case, and on which that

17  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

18  concerning an essential element of the nonmoving party's case necessarily renders all other facts

19  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

20  whatever is before the district court demonstrates that the standard for entry of summary

21  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

22            If the moving party meets its initial responsibility, the burden then shifts to the

23  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

24  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

25  establish the existence of this factual dispute, the opposing party may not rely upon the

26  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
/////

3

1  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2  'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

3  **OTHER APPLICABLE LEGAL STANDARDS**

4  I.  <u>Civil Rights Act Pursuant to 42 U.S.C. § 1983</u>

5        The Civil Rights Act under which this action was filed provides as follows:

6          Every person who, under color of [state law] . . . subjects, or causes
to be subjected, any citizen of the United States . . . to the
7          deprivation of any rights, privileges, or immunities secured by the
Constitution . . . shall be liable to the party injured in an action at
8          law, suit in equity, or other proper proceeding for redress.

9  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

10  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  <u>See</u>

11  <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362

12  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

13  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

14  omits to perform an act which he is legally required to do that causes the deprivation of which

15  complaint is made."  <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

16        Moreover, supervisory personnel are generally not liable under § 1983 for the

17  actions of their employees under a theory of <u>respondeat superior</u> and, therefore, when a named

18  defendant holds a supervisorial position, the causal link between him and the claimed

19  constitutional violation must be specifically alleged.  <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862

20  (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

21  allegations concerning the involvement of official personnel in civil rights violations are not

22  sufficient.  <u>See</u> <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

23  II.  <u>The Eighth Amendment and Inadequate Medical Care</u>

24        The unnecessary and wanton infliction of pain constitutes cruel and unusual

25  punishment prohibited by the Eighth Amendment.  <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986);

26  <u>Ingraham v. Wright</u>, 430 U.S. 651, 670 (1977); <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976).

1   In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove

2   that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

3   acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

4   Seiter, 501 U.S. 294, 298-99 (1991).

5           Where a prisoner's Eighth Amendment claims arise in the context of medical

6   care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

7   deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

8   Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need

9   and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050,

10  1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

11  (9th Cir. 1997) (en banc).

12          A medical need is serious "if the failure to treat the prisoner's condition could

13  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

14  McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical

15  need include "the presence of a medical condition that significantly affects an individual's daily

16  activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner

17  satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v.

18  Brennan, 511 U.S. 825, 834 (1994).

19          If a prisoner establishes the existence of a serious medical need, he must then

20  show that prison officials responded to the serious medical need with deliberate indifference.

21  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

22  deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

23  which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

24  (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

25  to medical care, however, "the indifference to his medical needs must be substantial.  Mere

26  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

1    Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

2    105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere

3    negligence in diagnosing or treating a medical condition, without more, does not violate a

4    prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate

5    indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

6    ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835

7    (quoting Whitley, 475 U.S. at 319).

8            Delays in providing medical care may manifest deliberate indifference.  Estelle,

9    429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in

10   providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

11   1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

12   1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

13   Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

14   prisoner need not show his harm was substantial; however, such would provide additional

15   support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

16   v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

17           Finally, mere differences of opinion between a prisoner and prison medical staff

18   or between medical professionals as to the proper course of treatment for a medical condition do

19   not give rise to a § 1983 claim.  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,

20   332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662

21   F.2d 1337, 1344 (9th Cir. 1981).

22                    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

23   I.  Defendants' Statement of Undisputed Facts and Evidence

24           Defendants' statement of undisputed facts is supported by citations to declarations

25   signed under penalty of perjury by defendant Bal and defendant Kelly.  It is also supported by

26   citations to plaintiff's amended complaint and copies of plaintiff's medical records, inmate

1    appeals, and prison officials responses thereto.  The evidence submitted by the defendants

2    establishes the following.

3              At all relevant times, defendant Bal was a physician and surgeon at CSP-

4    Sacramento.  At all relevant times, defendant Kelly was a chief psychologist and acting health

5    care manager CSP-Sacramento.  On March 21, 2006, plaintiff underwent a Magnetic Resonance

6    Imaging ("MRI") of his right shoulder.  The MRI showed mild degenerative changes of the

7    acromioclavicular joint.  It also showed cystic changes in the posterior superior lateral aspect of

8    the humerus near the insertion of the rotator cuff consistent with degenerative changes.  The

9    supraspinatus muscle was intact but there was altered signal of the supraspinatus tendon which

10   was thinned near its insertion and thin along the posterior mid aspect suggesting tendonopathy or

11   partial tear.  Positional imaging with a chest computerized tomography scan ("CT") was

12   recommended because the area in question - a soft tissue mass under plaintiff's right mid-

13   trapezius - was not imaged.  (Defs.' SUDF 2-3 & 29, Bal Decl. & Ex. A, Kelly Decl.)

14             On April 11, 2006, plaintiff received a renewal of his prescription for Motrin.

15   Plaintiff had been taking Motrin for a chronic right rotator cuff tear and tendonopathy in his

16   shoulder.  The following day, plaintiff saw a physician at CSP-Sacramento and received an order

17   for a CT scan as previously recommended in March.  On June 6, 2006, plaintiff underwent the

18   CT scan to evaluate the soft tissue mass near his right mid-trapezius at the base of his neck.  The

19   CT scan results were normal and showed no evidence of a mass in plaintiff's neck.  The bony

20   structures were also normal.  Although there was apparently a palpable mass in plaintiff's neck, it

21   was not evident on the CT scan.  (Defs.' SUDF 4-6, Bal Decl. & Ex. A.)

22             On July 18, 2006, Dr. Mathis, a physician at CSP-Sacramento, observed that

23   plaintiff had a mass on the back of his shoulder.  Dr. Mathis noted that the lesion was a lipoma

24   and was "benign and excision is cosmetic."  Plaintiff did not complain of pain around the soft

25   tissue swelling.  Plaintiff was told to wait for his CT scan results which could be retrieved in less

26   than a hour but he elected not to wait and left.  (Defs.' SUDF 7, Bal Decl. & Ex. A.)

On September 18, 2006, defendant Bal saw plaintiff and showed him a copy of his CT scan results.  As noted above, those results were negative and showed no abnormality. Plaintiff did not have any new complaints nor did he complain of pain or restriction of movement around the lipoma.  During defendant Dr. Bal's examination of plaintiff, he observed persistent soft tissue swelling and assessed the mass as a lipoma.[1]  (Defs.' SUDF 8-9, Bal Decl. & Ex. A.)

Defendant Bal's treatment plan for plaintiff was conservative and did not include surgery.  In defendant Bal's opinion, plaintiff did not need surgery because there was no record of restrictions of movement or significant pain from the lipoma during plaintiff's multiple physician visits.  For example, during Dr. Mathis's visit with plaintiff on July 18, 2006, he noted that the lesion was benign and excision would be cosmetic.  (Defs.' SUDF 11-12, Bal Decl. & Ex. A.)

On October 30, 2006, defendant Dr. Bal investigated plaintiff's inmate appeal at the first level of review.  At the first level of review, Dr. Bal interviews an inmate and discusses the inmate's complaint.  Plaintiff wanted to have the mass on his back removed but did not complain of pain or restriction of movement.  Plaintiff also wanted his medications refilled. During defendant Bal's examination of plaintiff, he found the same soft tissue swelling.  There were no changes in the size of the mass since plaintiff's last visit with defendant Dr. Bal on September 18, 2006.  Based on Dr. Bal's review of plaintiff's medical records and the results of his diagnostic tests, as well as his examination of plaintiff, his opinion was that excision of the mass was not medically necessary.  Defendant Bal renewed plaintiff's medications to help him with the pain in his right shoulder caused by his tendonitis.  If defendant Dr. Bal had found any

---

[1]  A lipoma is a growth of fat cells in a thin fibrous capsule usually found just below the skin.  Lipomas are soft to touch, usually movable, and are generally painless.  Lipomas are rarely life-threatening and the subcutaneous lipomas are not a serious condition.  Lipomas are usually removed for cosmetic reasons by excision.  This cures the vast majority of cases.  However, about one to two percent of lipomas reoccur after excision.  Approximately one percent of the general population has a lipoma.  Lipomas can occur at any age but are most common at middle age often appearing on people between 40-60 years old.  (Defs.' SUDF 10, Bal Decl. & Ex. A.)

1  medical reason to have the lipoma removed, he would have ordered surgery for plaintiff.

2  However, since defendant Bal found no medical basis to remove the lipoma, he denied plaintiff's

3  appeal.  Defendant Dr. Bal had no further contact with plaintiff after October 30, 2006.  (Defs.'

4  SUDF 13-16, Bal. Decl. & Exs. A & B.)

5          When plaintiff complained of pain, Dr. Bal prescribed him Motrin.  In defendant

6  Dr. Bal's opinion, any pain plaintiff experienced was caused by a slight tear of his tendon or

7  tendonitis in the right shoulder and not because of the lipoma.  Defendant Dr. Bal believes that

8  his treatment of plaintiff was proper and within the community standard of care,  was consistent

9  with the degree of knowledge and skill ordinarily possessed and exercised by general

10  practitioners under similar circumstances and that at no point did he deny plaintiff treatment that

11  was medically necessary or warranted.  According to Dr. Bal, plaintiff did not need the lipoma

12  removed from his neck/back area at the time he saw him in September and October 2006.

13  Finally, defendant Bal declares that he was, at all times, motivated by genuine concern for

14  plaintiff's health and well-being.  (Defs.' SUDF 17-28, Bal. Decl. & Ex. A.)

15          Defendant Kelly's only involvement in plaintiff's case was administrative.

16  Defendant Kelly responded to plaintiff's inmate appeal at the second level of review.  At the

17  second level of review, defendant Kelly's responsibility was to ensure that the appeal was

18  complete.  According to defendant Kelly, in reviewing medical appeals it was not her job to

19  second guess the opinions, conclusions, or recommendations of treating physicians.  Defendant

20  Kelly takes the position that she cannot make her own assessment as to whether medical staff

21  opinions, conclusions or prescribed treatments are necessary or appropriate.  (Defs.' SUDF 32,

22  Kelly Decl.)

23          On December 18, 2006, defendant Kelly denied plaintiff's inmate appeal.

24  Because defendant Kelly is not a medical doctor, Dr. V. Duc, a physician and surgeon, reviewed

25  the matter on her behalf.  Defendant Kelly based her response to plaintiff's appeal on Dr. Duc's

26  review and the first level reviewer's expert opinion in determining whether appropriate medical

treatment was provided.  Defendant Kelly understood that plaintiff was afforded the opportunity

to explain his medical concerns and to provide any supporting evidence or documents.  The

results of plaintiff's MRI and CT scan showed no indication for surgical excision at the time

plaintiff was seen.  Based on all of this information, defendant Kelly denied plaintiff's inmate

appeal.  (Defs.' SUDF 33-34, Kelly Decl.)

Defendant Kelly declares that she has never been deliberately indifferent to

plaintiff's medical needs.  She was never asked to provide any medical care or treatment to him.

Even if she had been asked, she is not a medical doctor and has no medical training and could not

have provided plaintiff with any medical diagnosis, prognoses, or recommendations of any kind.

To her knowledge, she has never even met plaintiff.  Defendant Kelly had no knowledge of

plaintiff's alleged medical condition until she received his inmate appeal on or about November

30, 2006.  Defendant Kelly states that at no time did she ever intentionally or knowingly cause

plaintiff to suffer any pain, harm, or injury, or cause any delay in his treatment.  (Defs.' SUDF

35-39, Kelly Decl.)

II.  Defendants' Arguments

Defense counsel argues that the defendants are entitled to summary judgment in

their favor with respect to plaintiff's Eighth Amendment claims because there is no evidence that

they were deliberately indifferent to plaintiff's medical needs.  With respect to defendant Dr. Bal,

counsel argues that the undisputed evidence shows that he saw plaintiff only twice.  On

September 18, 2006, he saw plaintiff regarding plaintiff's CT scan results which were negative

and showed no abnormality.  Defendant Dr. Bal shared a copy of the results with plaintiff.  On

October 30, 2006, defendant Dr. Bal saw plaintiff and conducted an interview at the first level of

appeal.  He renewed plaintiff's Motrin to help him with the pain in his right shoulder that was

caused, in Dr. Bal's opinion, by plaintiff's tendonitis.  However, since defendant Dr. Bal found

no medical basis to remove plaintiff's lipoma, he also denied his inmate appeal.  Counsel argues

that the evidence establishes that Dr. Bal never refused to treat plaintiff or cause any delay in

10

1  plaintiff's medical treatment, nor did he intentionally or knowingly cause plaintiff injury or pain

2  or know of and disregard an excessive risk to plaintiff's health.  (Defs.' Mem. of P. & A. at 12.)

3          With respect to defendant Kelly, defense counsel argues that there is no evidence

4  showing that she knew of an excessive risk to plaintiff's health and disregarded it.  In fact,

5  counsel contends, there is no evidence that she knew of plaintiff's medical condition before she

6  received his appeal on or about November 30, 2006.  Counsel asserts that the evidence

7  establishes that as a second level reviewer, defendant Kelly reviewed the information provided to

8  her by the first level reviewer and also had Dr. Duc review the matter on her behalf.  Counsel

9  points out that defendant Kelly has no medical training and is not authorized to second guess

10  opinions and recommendations of treating physicians.  Counsel argues that Kelly denied

11  plaintiff's appeal based on Dr. Duc's review and the first level reviewer's expert opinion.  (Defs.'

12  Mem. of P. & A. at 12-13.)

13  III.  Plaintiff's Opposition[2]

14          In opposition to defendants' motion for summary judgment, plaintiff argues that

15  he repeatedly informed the medical department that he had a lump on his back that had grown

16  noticeably larger in size.  After a year, plaintiff contends that the lump had grown to the size of a

17  golf ball.  The defendants, however, refused to remove the fatty tumor, which caused plaintiff a

18

19          [2] On June 3, 2010, plaintiff filed a motion for leave to act after expiration of time.  (Doc.
    No. 50.)  That filing included plaintiff's opposition to defendants' motion for summary judgment
20  and his and exhibits in support thereof.  However, the court inadvertently construed plaintiff's
    motion as a motion for an extension of time to file an opposition and granted him thirty days
21  leave to file an opposition.  On November 15, 2010, plaintiff filed a request for case status which
    included another copy of his opposition to defendants' motion for summary judgment but
22  without exhibits attached.  (Doc. No. 52.)  The court granted plaintiff's request for case status,
    filed his second opposition to the pending summary judgment motion with the erroneous
23  understanding that he had not previously filed an opposition, and granted defendants an
    additional fourteen days to file a reply in support of their motion.  On December 22, 2010
24  plaintiff filed a motion for clarification in this regard which the court will grant.  The court
    apologizes for any confusion it may have caused by its erroneous interpretation of plaintiff's
25  filings.  Plaintiff is advised that the court has filed both his June 3, 2010, and November 15, 2010
    oppositions to the motion for summary judgment and has considered both in arriving at the
26  findings and recommendations set forth herein.

1  great deal of pain and limited his ability to move and exercise.  Plaintiff notes that he filed two

2  inmate appeals and numerous medical request slips regarding the tumor but was

3  "inappropriately" notified that the tumor was not big enough to have surgically removed.

4  Plaintiff argues that the defendants were aware of the lump on his back and that he was

5  experiencing pain.  (Pl.'s Opp'ns to Defs.' Mot. for Summ. J. at 2-5 & Exs.)

6  **ANALYSIS**

7  I. Plaintiff's Serious Medical Needs

8         Based upon the evidence presented by the parties in connection with the pending

9  motion, the undersigned finds that a reasonable juror could conclude that plaintiff's lipoma and

10  any related pain constitute an objective, serious medical need.  See McGuckin, 974 F.2d at 1059-

11  60 ("The existence of an injury that a reasonable doctor or patient would find important and

12  worthy of comment or treatment; the presence of a medical condition that significantly affects an

13  individual's daily activities; or the existence of chronic and substantial pain are examples of

14  indications that a prisoner has a 'serious' need for medical treatment."); see also Canell v.

15  Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide

16  medical care applies "to medical conditions that may result in pain and suffering which serve no

17  legitimate penological purpose.").  Specifically, plaintiff's largely undisputed medical history, as

18  well as the observations and treatment by the defendants and other prison medical personnel,

19  compel the conclusion that plaintiff's medical condition, if left untreated, could result in "further

20  significant injury" and the "unnecessary and wanton infliction of pain."  McGuckin, 974 F.2d at

21  1059.  Accordingly, defendants' motion for summary judgment hinges on whether, based upon

22  the evidence before the court, a rationale jury could conclude that the defendants responded to

23  plaintiff's serious medical needs with deliberate indifference.  Farmer, 511 U.S. at 834; Estelle,

24  429 U.S. at 106.

25  /////

26  /////

II. Defendants' Response to Plaintiff's Serious Medical Needs

The court finds that the defendants have borne their initial responsibility of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the medical care provided to plaintiff. First, with respect to defendant Bal, a medical doctor, the evidence in this case demonstrates that he met with plaintiff on two occasions due to plaintiff's complaints regarding his lipoma. On September 18, 2006, defendant Bal saw plaintiff and shared with him a copy of his CT scan results which were negative and showed no abnormality. Dr. Bal observed that plaintiff had a lipoma, but plaintiff did not have any new complaints or complaints of pain or restriction of movement in the area of the lipoma at the time. In addition, there was no record of plaintiff experiencing restriction of movement or significant pain from the lipoma in his multiple physician visits prior to that time. Accordingly, defendant Bal chose a conservative treatment plan in addressing plaintiff's condition that did not include surgery. (Bal Decl. & Ex. A.)

On October 30, 2006, defendant Dr. Bal investigated plaintiff's inmate appeal at the first level of review and interviewed and discussed his complaint with plaintiff. Plaintiff wanted surgery for his lipoma but did not complain of pain or restriction of movement at the time. Plaintiff also wanted his medications refilled. Defendant Bal examined plaintiff and found the same soft tissue swelling, but discovered no changes in the size of the mass since plaintiff's last visit with him. Based on defendant Bal's review of plaintiff's medical records, as well as defendant his examination of plaintiff, defendant Dr. Bal determined that excision of the mass was not medically necessary. Defendant Bal renewed plaintiff's medications to help him with the pain in his right shoulder which Dr. Bal believed was due to tendonitis. Defendant Bal had no further contact with plaintiff after October 30, 2006. (Bal. Decl. & Exs. A & B.)

With respect to defendant Kelly, the evidence in this case demonstrates that she responded to plaintiff's inmate appeal at the second level of review. Because defendant Kelly is not a medical doctor, Dr. Duc, a physician and surgeon, reviewed the matter on her behalf.

1    Defendant Kelly based her response to the inmate appeal on Dr. Duc's review and the first level

2    reviewer's expert opinion.  Defendant Kelly understood that plaintiff was afforded the

3    opportunity to explain his medical concerns and to provide any supporting evidence or

4    documents to medical staff.  Defendant Kelly also understood that plaintiff had received MRI

5    and CT scans, the results of which showed no indication for surgical excision of the lipoma at the

6    time.  Based on all of this information, defendant Kelly denied plaintiff's inmate appeal.  When

7    defendant Kelly reviewed medical appeals, she deferred to the opinions, conclusions, or

8    recommendations of treating physicians and did not make her own assessment as to whether

9    medical staff opinions, conclusions or prescribed treatments are necessary or appropriate.  (Kelly

10   Decl.)[3]

11           Given the evidence submitted by defendants Bal and Kelly in support of their

12   motion for summary judgment, the burden shifts to plaintiff to establish the existence of a

13   genuine issue of material fact with respect to his inadequate medical care claims.  As noted

14   above, to demonstrate a genuine issue, the opposing party "must do more than simply show that

15   there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole

16   could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

17   for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  Here, the court has considered

18   plaintiff's oppositions to the pending motion for summary judgement and his verified complaint.

19   On defendants' motion for summary judgment, the court is required to believe plaintiff's

20   evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor.

21   However, drawing all reasonable inferences in plaintiff's favor, the court nonetheless concludes

22   that plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with

23   respect to his claim that the defendants responded to his serious medical needs with deliberate

24

25           [3]  This evidence calls into serious question the usefulness of the inmate appeal process in
     this case but does not impact resolution of the issue of whether plaintiff has presented any
26   evidence that he received constitutionally inadequate medical care.

1   indifference.  See Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.

2          Specifically, plaintiff claims that the defendants were deliberately indifferent to

3   his medical needs because they refused to authorize surgery for his lipoma.  However, as a matter

4   of law, a mere difference of opinion between a prisoner and prison medical staff as to the proper

5   course of medical care does not give rise to a § 1983 claim.  See Estelle, 429 U.S. at 107 ("A

6   medical decision not to order an X-ray, or like measures, does not constitute cruel and unusual

7   punishment."); Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332; Fleming v. Lefevere, 423 F.

8   Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of

9   care does not create a triable issue of fact because he has not shown that he has any medical

10   training or expertise upon which to base such an opinion.").  In this regard, plaintiff's

11   disagreement with defendants Dr. Bal and Kelly as to the appropriate course of diagnosis and

12   treatment, without more, is insufficient to survive defendants' motion for summary judgment.

13          In addition, plaintiff has failed to tender competent evidence demonstrating that

14   the course of diagnosis and treatment chosen by the defendants was medically unacceptable

15   under the circumstances.  To be sure, it appears from plaintiff's exhibits that at one time a Dr.

16   Schuster at California Substance Abuse and Treatment Facility recommended plaintiff undergo

17   excision of his right shoulder lipoma even though it was "not particularly tender."  However, Dr.

18   Schuster's recommendation does not render the medical treatment for the condition provided by

19   defendant Dr. Bal and defendant Kelly's care medically inadequate.  At most, Dr. Schuster's

20   decision represents a mere difference of medical opinion between doctors, which also does not

21   give rise to a cognizable § 1983 claim.  See, e.g., Toguchi, 391 F.3d at 1059-60 ("Dr. Tackett's

22   contrary view was a difference of medical opinion, which cannot support a claim of deliberate

23   indifference."); Sanchez, 891 F.2d at 242 (difference of opinion between medical personnel

24   regarding the need for surgery does not amount to deliberate indifference to a prisoner's serious

25   medical needs).  Moreover, Dr. Schuster made his recommendation in 2008, more than a year

26   after plaintiff allegedly sought treatment from the defendants.  At that time, plaintiff's lipoma

1  had enlarged to 7 to 8 cm.

2          To the extent that plaintiff experienced pain (regardless of its origin) and sought

3  help from the defendants, the evidence before the court demonstrates that defendant Dr. Bal

4  treated plaintiff's pain.  It is undisputed that he renewed plaintiff's prescription for Motrin upon

5  request when he examined plaintiff in connection with his inmate appeal.  (Bal. Decl. & Ex. A.)

6  With respect to defendant Kelly, the evidence in this case demonstrates that she was never in a

7  position to provide direct care to plaintiff.  To defendant Kelly's knowledge, she has never even

8  met plaintiff.  Moreover, even if she had been asked to treat plaintiff, defendant Kelly is not a

9  medical doctor and has no medical training.  She could not have provided plaintiff with any

10  medical diagnosis, prognoses, or recommendations of any kind.  (Kelly Decl.)

11          Finally, plaintiff has provided this court with no competent evidence

12  demonstrating that the defendants chose their course of diagnosis and medical treatment of his

13  condition in conscious disregard of an excessive risk to plaintiff's health.  See Wood, 900 F.2d

14  1334 ("While poor medical treatment will at a certain point rise to a level of constitutional

15  violation, mere medical practice, or even gross negligence, does not suffice.").  In fact, the

16  volume and content of plaintiff's medical records as well as the frequency of his medical visits

17  with defendant Dr. Bal and other medical personnel and the fact that he received both an MRI

18  and a CT scan of the area contradict plaintiff's subjective belief that the defendants were

19  deliberately indifferent to his serious medical needs.  Specifically, as to defendant Dr. Bal, during

20  his visits with plaintiff, he examined plaintiff, had the MRI and CT scan administered, shared

21  plaintiff's test results with him, and renewed plaintiff's prescriptions for his pain medication.

22  (Bal. Decl. & Ex. A.)  As to defendant Kelly, she based her denial of plaintiff's inmate appeal on

23  Dr. Duc's review and the first level reviewer's expert opinion as well as plaintiff's MRI and CT

24  scan results, which revealed no indication calling for surgical excision.  (Kelly Decl.)  At most,

25  the evidence submitted in connection with the pending motion arguably suggests that defendants'

26  decisions to deny plaintiff's request for surgery constituted neglect or medical malpractice but

1  does not indicate any deliberate indifference.  See McGuckin, 974 F.2d at 1060 ("A finding that

2  the defendant's neglect was an 'isolated occurrence' or an 'isolated exception,' . . . militates

3  against a finding of deliberate indifference").

4          Accordingly, for all of the foregoing reasons, the court concludes that the

5  evidence establishes that defendants Dr. Bal and Kelly were not deliberately indifferent to

6  plaintiff's serious medical needs and are entitled to summary judgment in their favor with respect

7  to plaintiff's Eighth Amendment claims.

8                                **OTHER MATTERS**

9          Plaintiff included with his first opposition to defendants' motion for summary

10  judgment a motion for leave to file a second amended complaint.  First, plaintiff is advised that

11  as a litigant proceeding in forma pauperis, his pleadings are subject to evaluation by this court

12  pursuant to the in forma pauperis statute.  See 28 U.S.C. § 1915.  Since plaintiff did not submit a

13  proposed second amended complaint, the court is unable to evaluate it and plaintiff's motion for

14  leave to amend must therefore be denied.  Moreover, plaintiff is advised that under the court's

15  July 6, 2009 scheduling order, the parties were required to file all pretrial motions on or before

16  January 2, 2010.  In the absence of good cause, the court will not modify the scheduling order in

17  this case.  See Fed. R. Civ. P. 16(f); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604,

18  607-08 (9th Cir. 1992).  Good cause exists when the moving party demonstrates that he could not

19  meet a deadline despite exercising due diligence.  Id. at 609.  Here, plaintiff's vague and

20  conclusory motion in which he merely opines that defendants will not be prejudiced by the

21  court's granting of his motion fails to demonstrate good cause.  Accordingly, plaintiff's motion

22  for leave to amend will be denied.

23          Plaintiff also included with his oppositions to defendants' motion for summary

24  judgment what appear to be Rule 56(f) motions.  Therein, plaintiff contends that summary

25  judgment should be denied or at least stayed because he is awaiting responses to discovery

26  requests he sent to the Attorney General's office in April 2009.  Plaintiff is advised that he has

failed to submit a proper request or make the requisite showing that he is entitled to relief under Rule 56(f).  Specifically, plaintiff has failed to submit an affidavit or demonstrate in any way that there are specific facts he hopes to discover that could raise an issue of material fact in this case.  Harris v. Duty Free Shoppers Ltd. P'ship, 940 F.2d 1272, 1276 (9th Cir. 1991); Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1547 (9th Cir. 1991).  "The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists."  Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987).  See also Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306 n.1 (9th Cir. 1986) (holding that the party opposing summary judgment "has the burden under Rule 56(f) to show what facts [he] hopes to discover to raise an issue of material fact").  Accordingly, plaintiff's Rule 56(f) motions will be denied.

## CONCLUSION

IT IS HEREBY ORDERED that:

1.  Plaintiff's June 3, 2010 motion for leave to amend (Doc. No. 50) is denied;

2.  Plaintiff's June 3, 2010 and November 15, 2010 motions pursuant to Rule 56(f) (Doc. Nos. 50 & 52) are denied; and

3.  Plaintiff's December 22, 2010 motion for clarification (Doc. No. 54) is granted.

IT IS HEREBY RECOMMENDED that:

1.  Defendants' March 9, 2010 motion for summary judgment (Doc. No. 47) be granted; and

2.  This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within fourteen days after service of the objections.  The parties are

3  advised that failure to file objections within the specified time may waive the right to appeal the

4  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  DATED: January 13, 2011.

6

7  _Dale A. Drozd_

8  DAD:9                                     DALE A. DROZD
   hern1986.57(2)                            UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26